Wills *v.* Field.

---

WILLIAM B. WILLS, guardian, &c.,

*v.*

ISAAC W. FIELD et al.

[Filed July 13th, 1901.]

Where a distinct parcel of the mortgaged premises has been held for over twenty years by grantees of the mortgagor, without covenant to pay the interest or principal of the mortgage, or actual payment of either, or other recognition of the encumbrance of the mortgage on such distinct parcel, and without entry by the holder of the mortgage, the mortgage has ceased to be a lien on such distinct parcel of the mortgaged premises, notwithstanding it was duly and seasonably recorded and interest has been continuously paid by other holders of other distinct parcels of the mortgaged premises.

---

On bill to foreclose, answers and statement of admitted facts.

*Mr. Jerome B. Grigg,* for the complainant.

*Mr. Charles E. Merritt,* for Carty et al., defendants.

*Mr. Samuel W. Beldon,* for Herron et al., defendants.

GREY, V. C.

This bill is filed to foreclose a mortgage made by Joseph Field, Jr., to Margaret Seebolm, dated April 1st, 1822, securing the payment of $2,200, with interest, in one year from date, upon

several tracts of land situate in Mansfield township, Burlington county, consisting of numbered lots in Jonathan Rhea's town plot of the town of Fieldsborough. The mortgage was duly recorded on April 29th, 1822. The premises covered by it are on a "map of Fieldsborough," produced in evidence, recorded at Trenton, Book A V, page 397. They consist of lots Nos. 2, 3, 4 and 14, which front on the Delaware river; lots Nos. 35, 36 and 37, fronting on First street; lots Nos. 42, 46 and 52, fronting on Second street, and lots Nos. 80 and 81, fronting on ⸺ street, between Second and Third streets. The mortgage and accompanying bond have, by various assignments, come to be the property of Reading Wood, who has been declared, by the return of an inquisition *de lunatico,* to be a lunatic, and the complainant was, on February 4th, 1895, by the orphans court of Burlington county, appointed guardian of his person and estate.

The several tracts of land included in the mortgage have, by intermediate conveyances, come to be held at the present time by different persons, and some of them now, by answer, deny the liability of their several ownerships to the mortgage, or dispute the order in which their lands should be sold to pay it.

The disposition made of the mortgaged premises and their present holding is as follows: After the making and recording of the complainant's mortgage, in 1822, the several lots were dealt with together by the mortgagor until 1831.

On October 19th, 1831, lot No. 14, fronting on First street and reaching to the Delaware river, was separated and conveyed to John L. McKnight, by deed duly recorded. By intermediate conveyances this lot has been divided into two parts. That portion lying southeast of the Camden and Amboy railroad track has come to be owned by the defendant Winfield S. Carty, who mortgaged the same for $1,500 to Thomas H. Eaton, who is also made a defendant in respect to his mortgage. The residue of lot No. 14 has come to be owned by the Camden and Amboy Railroad and Transportation Company, now leased to the Pennsylvania Railroad Company, and those two companies are made defendants in respect to their ownership of these portions of the mortgaged premises.

The next disposition was made of a strip of land, thirty feet

Wills *v.* Field.

wide, across lots Nos. 2, 3 and 4, on First street, which was conveyed on September 10th, 1835, to the Camden and Amboy Railroad and Transportation Company.

The statement of facts agreed upon admits that the railroad company's part of lot No. 14 and its strip across Nos. 2, 3 and 4 have been in its exclusive and undisputed possession, without charge by, or payment to, the holders of the complainant's mortgage. It also admits that Winfield S. Carty and his predecessors have been in like possession of his portion of lot No. 14, with like freedom from charge by, or payment to, the mortgage-holders. There is no evidence that, in making the original conveyance of No. 14 and the railroad strip, any notice was taken of the mortgage now held by the complainant. No covenant to pay it, by either the grantor in those deeds or by the grantees, is offered in proof. In actual fact, the grantees appear to have held their possession of those lots for over sixty years before the bill was filed, without either recognizing or being required to recognize the complainant's mortgage, by covenant or by payment of interest or principal, or in any other way but the record.

The defendants the Camden and Amboy railroad and the Pennsylvania railroad and Winfield S. Carty and wife and Thomas H. Eaton, mortgagee of Carty, all defend, and deny the liability of lot No. 14 and the thirty-foot-wide strip across Nos. 2, 3 and 4 to the complainant's mortgage, because those defendants, and those under whom they claim, have held those portions of the mortgaged premises for over twenty years, without any entry by the holders of the mortgage and without paying any interest or principal on the complainant's mortgage.

The cases of *Blue* v. *Everett, 11 Dick. Ch. Rep. 455,* and *Colton* v. *Depew, 15 Dick. Ch. Rep. 454,* in the court of appeals, have dealt with the effect of non-payment for twenty years of interest or principal of a debt secured by bond and mortgage. Upon their authority it has been held in this court that "a payment by the owner of one distinct portion of the mortgaged premises, who, perhaps, has assumed payment of the whole mortgage debt, cannot, standing alone, be construed as an admission by the owner of another distinct portion of the title of the mortgagee to that distinct portion of the premises." *Ely* v. *Wilson, 16*

Wills *v.* Field.

*Dick. Ch. Rep. 94.* In the case under consideration the mortgage has remained a charge upon lot No. 14 and upon the railroad strip by its record alone. There has been no release and there has been no special covenant to pay it by any holder of any distinct part of the mortgaged premises, nor has there been any act of recognition of its existence as an encumbrance by any grantee of lot No. 14 or of the railroad strip.

Whatever may have been the law before the above-cited decisions regarding the lien of a mortgage upon a parcel of the mortgaged premises conveyed away by the mortgagor and held under the circumstances noted, those judgments appear to have settled it that a parcel held, as lot No. 14 and the railroad strip over Nos. 2, 3 and 4 have been, for more than twenty years (sixty-five, in fact), without either recognition or assertion of the lien of the mortgage, has become free from its charge. The bill must be dismissed as to the defendant owners of lot No. 14 and the railroad strip over lots Nos. 2, 3 and 4.

Lots Nos. 80 and 81, on ———— street, between Second and Third streets, on the map of Fieldsborough, are described as included in the mortgage. The defendant owners of these lots set up two defences—*first,* they claim that they hold these lots by a title anterior and superior to that of the mortgagor. The complainant's mortgage was made in 1822. One John Adams was, before that date, the holder of the title to lots Nos. 80 and 81. The defendants, present owners of those lots, insist that they derive their title to them by a deed executed in 1816 by the administrator of Adams to one Philip Quigley, who, in 1830, conveyed to the grantors of the present owners of lots Nos. 80 and 81. The 1816 deed was never recorded, but its existence is recognized by a recital in a deed making part of the chain of title under which complainant's mortgage subsequently came into being. The defendants contend that ever since the date of the deed from Quigley (1830) they have had "actual, adverse, exclusive possession, without let or hindrance of anyone." The complainant insists that his mortgage became, by the record, a charge upon the lots Nos. 80 and 81 when it was made; that if Adams, the antecedent owner, had, by his administrator, conveyed to Quigley, by a deed prior to the making of

the mortgage, that fact is of no significance, as the deed was not recorded when the mortgage was made, &c. This phase of the case presents the question discussed by the court of appeals, in *Chadwick* v. *Island Beach Co., 16 Stew. Eq. 624,* where, *obiter,* that court declares that "a defendant in a foreclosure suit, if he has a title paramount to that of the mortgagee and intends to enforce it, must set it up by answer." The suggestion in the *Chadwick Case,* while quite positive that the defendant who claims under an alleged paramount title must set it up by way of answer, does not declare how, in the foreclosure suit, the question of the superiority of the alleged paramount title shall be tried. A long line of cases has determined that a foreclosure suit is not a proper proceeding in which to litigate the claims of one asserting a title alleged to be paramount and in hostility to that of the mortgagee. *Coe* v. *Midland Railroad Co., 4 Stew. Eq. 116,* and cases there cited.

It is unnecessary in this case to prescribe the mode whereby the suggestions of the *Chadwick Case* can be carried into effect. The lien of the mortgage is no longer forceful on lots Nos. 80 and 81, even if the mortgage title should be held to be superior to that set up by the present holders of those lots. The stipulated facts admit that ever since the date of the deed from Quigley (1830) the defendants, devisees of Forbes and heirs-at-law of Herron, have been supposed to be the owners of lots 80 and 81, and have had actual, adverse, exclusive and continuous possession of those lots; that they have never paid the holders of the mortgage either interest or principal, and have had their possession without the let or hindrance of anyone. These circumstances show an actual and notorious possession of lots 80 and 81 by the defendants Herron and Forbes, claiming to be owners, by a title adverse and hostile to the mortgage, for more than sixty years before the bill was filed in this cause. Under the principle declared in the above-cited cases, the mortgage-holder cannot, under such circumstances, enforce the mortgage against the portion of the mortgaged premises so freed from its charge.

As the mortgage is held to be no longer a lien on the lots of the answering defendants, there is no need to consider the inci-

dental questions raised by them touching the crediting of the value of released lots against the mortgage debt for the benefit of the answering defendants.

The final result is that the sale under this foreclosure must be limited to the portions of the mortgaged premises owned by those defendants who have, or whose grantors have, within twenty years, recognized the lien of the mortgage, and which have not been released. These portions are the parcels held by the defendants Israel Johnson, trustee; Rebecca H. Field, widow, and Malcolm A. Field, Jr., and Isaac W. Field, Jr.

A decree for the complainant will be advised according to the views above expressed.